

U.S. Department of Justice

*John C. Gurganus*
*Acting United States Attorney*
*Middle District of Pennsylvania*

Website: www.justice.gov/usao/pam/
Email: usapam.contact@usdoj.gov

---

| | | |
|---|---|---|
| *William J. Nealon Federal Building*<br>*235 N. Washington Avenue, Suite 311*<br>*P.O. Box 309*<br>*Scranton, PA  18503-0309*<br>*(570) 348-2800*<br>*FAX (570) 348-2037/348-2830*<br>*TTY (570) 341-2077* | *Sylvia H. Rambo United States Courthouse*<br>*1501 N. 6th Street*<br>*Box 202*<br>*Harrisburg, PA  17102*<br>*(717) 221-4482*<br>*FAX (717) 221-4493/221-2246*<br>*TTY (717) 221-4452* | *Herman T. Schneebeli Federal Building*<br>*240 West Third Street, Suite 316*<br>*Williamsport, PA  17701-6465*<br>*(570) 326-1935*<br>*FAX (570) 326-7916*<br>*TTY (570) 326-9843* |

February 26, 2025

<u>Via ECF</u>

The Honorable Matthew W. Brann
Chief United States District Judge
Middle District of Pennsylvania
240 West Third Street
Williamsport, PA 17701

   Re: <u>United States v. Max Vance, a/k/a, Andre J. Burk</u>
     <u>(4:24-CR-00015)</u>

Dear Chief Judge Brann:

  Defendant Max Vance is scheduled to appear before Your Honor for a detention hearing on February 28, 2025. The Government opposes Vance's release and respectfully submits this letter in support of its position.

  The relevant procedural history is as follows. The Honorable Karoline Mehalchick, United States District Judge, signed a criminal complaint against and issued an arrest warrant for Vance on January 19, 2024. Case No. 3:24-MJ-00005. The FBI arrested Vance in the Southern District of California on January 20, 2024.  The Government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A), which was held before the Honorable Barbara L. Major, United States Magistrate Judge, Southern District of California, on January 30, 2024.

Judge Major ordered Vance detained, finding by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. (Doc. 12, at 4–8).

The Government again moved for detention pursuant to section 3142(f)(2)(A) at Vance's initial appearance in this District before the Honorable Joseph F. Saporito, Jr., on March 7, 2024. Judge Saporito scheduled a detention hearing. (Doc. 21). On March 12, 2024, Vance filed a motion to cancel the detention hearing, reserving the right address the issue of detention at a later time, (Doc. 22), which Judge Saporito granted, (Doc. 23).

On August 19, 2024, Vance filed a motion for bail, asserting he "located a stable and safe residence at which he can stay pending disposition of his case." (Doc. 29, at 2). This Court scheduled a bail hearing, (Doc. 30), which Vance subsequently moved to cancel, asserting his "circumstances have recently changed" such that it was "in his best interest to cancel the hearing," (Doc. 31, at 2). Vance filed the instant motion for bail in December, asserting he "located a stable and safe residence at which he can stay pending disposition of the case," and his expert's "preliminary analysis of the 'loss' in this case" suggests Vance "may be getting close to a time-served sentence." (Doc. 35, at 2–3).

Despite his locating a "stable and safe" residence and his expert's "preliminary analysis," Vance remains a serious risk of flight, and the Court should order him detained pending trial.

Section 3142(f)(2)(A) of the Bail Reform Act permits an attorney for the Government to move for pretrial detention in any case that involves "a serious risk that the person will flee." While the Government must prove a defendant's danger to the community by clear and convincing evidence, flight risk need only be established by a preponderance of the evidence. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).

Here, a preponderance of the evidence establishes Vance is a flight risk, considering each of the factors enumerated in Section 3142(g).

2

***The Nature and Circumstances of the Offense Charged***. This is a computer hacking case in which a sophisticated software engineer, Vance, accessed Geisinger Health System's servers without authorization and executed SQL[1] queries to exfiltrate more than 1.2 million patient records. Vance worked as a Principal Healthcare Interface Engineer within the healthcare division of Nuance Communications, Inc., a software company headquartered in Massachusetts, which provides software solutions to healthcare providers. Microsoft owns Nuance. Geisinger contracted Nuance to develop and upgrade its healthcare software within the Geisinger computer network. Nuance employees working on the contract had access to certain Geisinger computer systems to perform their duties. Vance was one of those employees.

Microsoft fired Vance via a Microsoft Teams video conference for unrelated misconduct on November 27, 2023. On November 29, 2023, Vance logged into his Microsoft laptop using his Nuance credentials. From there, Vance logged into Geisinger's computer system and ran several SQL queries of Geisinger's servers for numerous categories of private patient information. Vance downloaded the patient information into two computer files named "pt.dat" and "2pt.dat." The files contained personally identifiable and protected health information of more than 1.2 million patients, including patients': name, date of birth, address, admit and discharge code, medical record number, race, gender, phone number, and care location.

With both data files in hand, Vance logged into his Microsoft Azure cloud storage account and uploaded the files to the cloud. From there, Vance downloaded the patient files from Azure to the local drive on his laptop. Then he removed his Azure account and cleared all its history and metadata. Then he cleared his internet browsing history.

The FBI executed a search warrant at Vance's apartment on January 19, 2024. A review of numerous digital devices seized revealed

---

[1] SQL stands for Structured Query Language. SQL is a computer programming language used to communicate with databases, in this case, the database stored on Geisinger's private servers in Pennsylvania.

Vance transferred the patient data from his Microsoft laptop to a personal Samsung hard drive. The FBI's review of Vance's devices did not reveal evidence that Vance transferred the data to other devices or elsewhere.

*__The Weight of the Evidence__*. As currently charged, the Government must prove Vance (1) intentionally accessed a protected computer, (2) without authorization, and (3) obtained information valued at more than $5,000. The weight of the evidence going to each of these elements is substantial.

First, Geisinger's servers are "protected computers"—that is, computers used in or affecting interstate commerce or communication, 18 U.S.C. § 1030(e)(2)(B)—as evidenced by the fact that Vance was in Southern California digitally communicating interstate with Geisinger's servers located in Pennsylvania.

Second, Vance's breach of Geisinger's servers was without authorization, since he did so after Microsoft fired him. Once fired, Vance was not authorized to access Geisinger's private servers. Microsoft fired Vance over Microsoft Teams and sent a follow-up email with his termination paperwork. In an interview with the FBI, Vance admitted he received the termination email.

Third, Vance's breach of Geisinger's servers was recorded on video. Geisinger helpfully employs a digital security software called SecureLink, which provides Geisinger vendors, such as Nuance, with secure remote access to Geisinger computer systems. A feature of SecureLink is the ability to record a user's computer screen upon access to the company's servers. So each movement of Vance's mouse and stroke of a key described above was recorded on video.

Fourth, the FBI's forensic review of Vance's devices seized during the search warrant executed as his apartment revealed the patient data files in the recycle bin of his Microsoft laptop and personal Samsung external hard drive. Vance was the only occupant of his apartment.

Fifth, the Government's valuation expert, after an extensive review of the market for large datasets of PII, found the data exfiltrated by Vance to be worth $77,000 to $120,000—more than fifteen times the statutory threshold.[2]

In sum, the weight of the evidence is substantial.

***The History and Characteristics of the Defendant***. Vance has an egregious history of fleeing prosecution, disobeying court orders, and altering his identity.

### A.   Vance has a history of fleeing prosecution.

Vance has two outstanding warrants—one in Montgomery County, PA, and the other in Gloucester County, NJ. Both appear to stem from Vance's harassment, stalking, and extortion of a victim in New Jersey. The warrants are extraditable, which renders detention moot.

As described in the New Jersey police reports (Exhibits 1 through 5), Vance met the victim on a dating website in 2021.[3] They met up and had a discussion of a sexual nature in Vance's car, which Vance surreptitiously recorded. Vance subsequently told the victim about the recording, threatening to post it on YouTube if the victim didn't have sex with him and send him $5,000 in Bitcoin. Then Vance posted the video on YouTube and sent it to the victim's spouse. The victim got a temporary restraining order, which was served on Vance on August 9, 2021. Then New Jersey charged Vance criminally for criminal coercion, stalking, and cyber harassment.

---

[2] This number is not to be conflated with "loss" under U.S.S.G. § 2B1.1, which means "reasonably foreseeable pecuniary harm that resulted from the offense." In this case, that would include costs associated with Geisinger's dutiful identification of and response to the data breach, which the Government believes to be well over $1 million. In other words, Vance is not, as he claims, "getting close to a time-served sentence." Rather, the Government anticipates a significant offense level increase under the section 2B1.1 loss table.

[3] Exhibits 1 through 18 have been provided to the defense and will be filed with the Court under seal.

On or around September 8, 2021, Vance continued to harass the victim, implying he had a video he secretly took of them having sex that he would disclose and generating numerous Instagram accounts and phone numbers to contact the victim and avoid being blocked. Reviewing this evidence, New Jersey charged Vance with witness tampering and stalking. A warrant issued on September 20, 2021, which remains outstanding.

Vance, originally named Andre Burk, petitioned to change his name in Montgomery County, PA, on September 13, 2021. Exhibit 6. The FBI found the Decree for Change of Name in his apartment, dated November 24, 2021. Exhibit 7.

Vance moved to Southern California in or around March 2022. On March 10, 2022, the victim's restraining order became final. On March 18, 2022, Vance sent a video containing sensitive details of their initial encounter to multiple of the victim's family members. New Jersey charged Vance with contempt of court for violating the restraining order. In or around April 2022, Vance continued to contact the victim, urging the victim to drop the final restraining order.

The state court in Gloucester County, New Jersey, scheduled an initial appearance for Vance on his stalking, cyber harassment, and contempt of court charges for June 9, 2022. Notices of the hearing were sent to Vance in May 2022. Vance failed to appear. The FBI found the notices of hearing at Vance's apartment. Exhibit 8.

In sum, Vance was served with a restraining order and charged criminally, then he changed his name and moved to California. The FBI interviewed Vance following execution of the federal search warrant in January 2024. Vance said he always wanted to change his name, but admitted his legal troubles in New Jersey did push him to submit his name change paperwork. He said he moved to California for the warm weather.

### B.   Vance has a history of disobeying court orders.

The civil restraining order from New Jersey and Vance's failure to appear in his criminal case aren't the only court orders Vance has failed to obey.

As described in the police report, filed herewith (Exhibit 9), Vance allegedly sexually harassed another victim in Southern California in September 2023. The victim, who knew Vance only as "Marcus," applied for and received a temporary restraining order on December 8, 2023, which, among other things, prohibited Vance from possessing firearms or ammunition. Exhibit 10.

The FBI found the TRO paperwork on Vance's desk during the search of his apartment. The FBI asked Vance, for officer safety purposes, whether he had any firearms in the residence. Vance said, "No." The search revealed a serialized handgun on a seat next to the kitchen table and a non-serialized handgun, also known as a "ghost gun," inside the kitchen trash can. Exhibit 11. A firearms check revealed Vance does not have any firearms registered to him in California.

The San Diego County Sheriff's arrested Vance for possessing an undetectable firearm and violating the domestic violence restraining order by possessing the firearms.

### C.   Vance has a history of altering his identity.

Vance legally changed his name from Andre Burk to Max Vance following his legal troubles in New Jersey, as explained above. However, a search of his apartment and vehicle revealed he has also altered his identity illegally.

The FBI found approximately 17 false identification documents during execution of the search warrant. Exhibits 12, 13. The documents consisted of mostly driver's licenses from various states (including Florida, Pennsylvania, and Delaware), bearing various names (including Mark Davis, Andre Burk, and Richard Lambert), and all bearing Vance's headshot. There was also an employee identification

document bearing the name "Mark Davis" and Vance's headshot above the title "Janitorial services."

In addition, the FBI found the equipment necessary to make these fake IDs in Vance's apartment. Vance had a printer, ink, numerous blank plastic ID cards (some with the backside of the driver's license already printed), and a magnetic card swipe reader. Exhibits 14, 15. The card reader is used to encode the black stripe on the back of many identification documents and credit cards.

The evidence demonstrates Vance uses these false identities. For example, as noted above, the victim in Southern California only knew Vance by "Marcus," which correlates to the numerous identification documents at Vance's apartment bearing the name Mark Davis. In addition, the FBI located a notarized Postal Service Form 1583, Application for Delivery of Mail Through Agent, in Vance's apartment. Exhibit 16. Vance put his name as Mark Davis, with a Newark, Delaware address matching that of the fake Delaware ID found with Vance's headshot.

Accordingly, Vance is not only a sophisticated software engineer, but he has also demonstrated facility with altering his identity legally and illegally—identities he can use to flee and avoid prosecution again.[4]

In addition, Vance is from the Philadelphia area. To the Government's knowledge, Vance has no family or community ties to this District. The last time he was in or around Philadelphia, he changed his name and moved to California to avoid his legal troubles in New Jersey.

**Danger to Any Person and the Community**. Vance is obviously a danger to the two domestic violence victims noted above. His gun possession, computer breaching, and identity obscuring also betray a danger to the community. However, the Third Circuit Court of Appeals has made clear that where, as here, the Bail Reform Act permits a

---

[4] The FBI also found puzzling but concerning items in Vance's apartment, such as a GPS tracker, exhibit 17, and a realistic identity changing mask, exhibit 18.

8

detention hearing only on the basis of a serious risk of flight, the Court may not detain the defendant on the basis of danger to the community. *Himler*, 797 F.2d at 162. Accordingly, the information regarding Vance's criminal past noted above is provided to the Court only for the purpose of demonstrating Vance's risk of flight.

In conclusion, when the defendant appears before this Court on February 28, 2025, Your Honor will see a man who is a sophisticated software engineer and identity fraudster with a history of fleeing prosecution and disobeying court orders. In other words, a preponderance of the evidence demonstrates Vance is a serious risk of flight. And the Government respectfully requests the Court deny his release.

        Sincerely,

        JOHN C. GURGANUS
        Acting United States Attorney

By: */s/ Kyle A. Moreno*
     KYLE A. MORENO
     Assistant United States Attorney

Cc: Gerald A. Lord, Esq.