From: Max Vance
Re: United States v. Max Vance (4:24-CR-00015)
Subject: Letter response to Moreno's Sept 23, 2025 letter
To: Chief Judge Matthew Brann

FILED
WILLIAMSPORT
NOV 05 2025
PER_____NR
DEPUTY CLERK

Dear Chief Judge Brann,
County prison officials have implemented a comprehensize approach to providing agencies like the do"j" and fbi with immoral, unconstitutional, and unethical advantages in legal disputes. Amongst this plethora of completely unethical advantages that ~~is~~ is being provided to the do"j" courtesy of county prison officials/staff is the imposition of a blockage on pertinent legal information directly related to this case, including the docket sheet. A day or two ago, for the first time I was able to view the docket sheet; an outdated printed copy was mailed to me. The letter that do"j" Attorney Moreno submitted on 9-23-2025 is listed as a "brief in opposition" on the docket sheet. I've decided to write this letter as a response to Moreno's letter. I will limit the content in this letter to responding to topics mentioned in Moreno's letter, and to pointing out how my brief in support was mischaracterized and inaccurately portrayed.

Page 1 of 7

Moreno's letter states "Vance does not allege that his cell has been searched." I averred on page 5 of my brief in support, document 82, that my cell has been searched and my legal documents, which include legal mail and court sealed documents, has been ~~inspected~~ inspected multiple times outside of my view, presence, and awareness by prison staff. I have never been cited for possessing contraband or for violating prison rules. Inspecting my property without me present is completely unnecessary and serves no legitimate purpose considering the fact that the inspections can be performed just as easily with me there. Considering the fact that prison officials readily and without question provide information to various antagonists this unnecessary behavior is suspicious, threatening, and can easily compromise the integrity of a legal defense.

In Moreno's letter it says "subject to poor air quality with "contaminated particles" in "some areas" of the prison". What I stated in my brief in support, page 5 doc 82, is that there have been many incidents where the air has been "contaminated with particles that damage/

destroy neurological structures in the brain". The air quality issue is a sensitive topic. As a consequence of the nature of this pretrial incarceration that I am being compelled to endure, for the first time in my life I am living with drug addicts, and I am being subjected to prison environments where illicit drug is common. The Airborne neurotoxins and other harmful contaminants are being generated by the burning/smoking of illicit drugs and other toxic substances. As a result, I have been repeatedly exposed to second hand smoke, that consists of incredibly toxic particulate matter, from the burning and smoking of toxic substances. Since I've been transferred to county prisons in Pennsylvania by the USMS I've been repeatedly exposed to this hazard at every prison and "correctional" facility that I've been held in. Prison officials are aware of this but the issue persists. This is a systemic issue throughout the County prison system in Pennsylvania.

Repeated exposures to these toxins have led to lingering adverse neurological effects and injuries, including frequent headaches, memory loss, and cognitive decline. Prison "medical" staff are refusing to allow me to

see a neurologist or any clinician who has expertise in neurological health. My cognitive capabilities are ~~being~~ deteriorating, and thus my ability to defend myself against allegations from the do"j", and even my ability to be a productive member of society is being attacked and undermined by the unethical, unhealthy, and injurious conditions in county prisons.

In his September 23rd letter Moreno ~~provided~~ provided his description of, exhibit B on doc 85. The last test result on exhibit B shows that my gastro-intestinal system is bleeding and that I am suffering from gastrointestinal bleeding. This is the primary indicator of colon cancer and is also associated with another commonly fatal condition, if not properly treated, known as an intestinal blockage/obstruction. The severity and frequency of the gastrointestinal bleeding has only increased over time. These harmful, severely injurious, and life threatening conditions of pre-trial confinement serve no legitimate governmental purpose or goal, and also ~~~~ function as ~~~~ violations of my fifth and fourteenth ~~~~ Amendment rights (Bell v. Wolfish, 441 U.S. 520 (1979)).

Page 5 of 7

In his letter Moreno brought up the photocopy policy at this County prison, described in doc 85 exhibit E. Numerous prisons in the U.S. allow prisoners including pre-trial prisoners direct access to photocopy machines so that they can copy sensitive legal documents, including legal mail and court sealed documents, without compromising their legal defenses and reveal sensitive information ~~to people~~ inappropriately. The claim that it is necessary to compel pre-trial prisoners to unethically and unnecessarily waive their 1st amendment rights and ~~~~ attorney-client privilege to avoid copyright infringement is a lie and a false pretense created by corrupt County prison officials. The temporal and economic resources needed to use the photocopy machine to violate copyrights would be extreme, and ultimately cost prohibitive, making such an activity completely impractical. The prison charges 10 cents per photocopied page which is much more than what content owners and publishers charge per page. The reality is this resource is being abused by corrupt county prison officials to make it more difficult for pre-trial prisoners to share

legal information with the courts and legal experts. This perarcious policy is designed to discourage prisoners from sharing, and limit the ability of prisoners to share, information with the courts and others that presents the prison in a negative light.

On the last page of Moreno's letter he says "Varee's complaint of the lack of a notary in the prison, it is not clear how this prejudices his defense". The lack of an available notary service for my use restricts and limits my access to the courts. Numerous motions in criminal and civil court require affidavits. Power of attorney is needed to fund my legal defense preparation. These funds are crucial to my ability to prepare my legal defense. This was stated on page 4 of my brief in support (doc 82).

My ability to have unobstructed communications with various legal and defense experts is crucial for my legal defense preparations, especially due to the fact that prison officials have imposed embargoes on all categories of information including legal information. This

Is discussed in my brief in support (Doc 82).

On the second page of Moreno's Sept 23rd 2025 letter he states "The Government cannot speak to any legal phone calls". County Prison officials/staff have provided the do"j" with records on all of my phone calls including my legal calls, that can be made successfully to only a couple of legal offices. Records on all my legal calls have been provided to the do"j" both successful and unsuccessful calls I will submit this information as exhibit C with this letter.

County prison officials/staff continue to abuse their discretion in every possible way causing substantial detriment to my health and legal defense preparations with no end in sight. Prison officials have made their intentions abundantly clear. Their intentions are to obstruct and undermine my legal defense preparations.
570 323 9314 is a legal call.

Date: 11-1-2025, Nov 11 2025
Sincerely,
Max Vance

Max Vance
Lycoming County Prison
277 W Third Street
Williamsport, PA 17701



RECEIVED
WILLIAMSPORT
NOV 05 2025
PER NR
DEPUTY CLERK

Urgent Confidential Legal Mail

Clerk of the Court
United States District Court
240 west Third street
Williamsport, PA 17701