# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:24-CR-00015 |
| v. | (Chief Judge Brann) |
| MAX VANCE, | |
| Defendant. | |

### MEMORANDUM OPINION

### FEBRUARY 19, 2026

**I.     BACKGROUND**

In 2024, Max Vance was indicted for obtaining information from a protected computer, in violation of 18 U.S.C. § 1030(a)(2).[1] The indictment also includes a forfeiture allegation.[2]

That indictment arises from an incident on November 29, 2023, when Geisinger Health System ("Geisinger") suffered a "security incident" related to its computer network.[3] Geisinger's computer network was operated by Nuance Communications, Inc., which was in turn owned by Microsoft Corporation.[4] Nuance gave several employees access to Geisinger's computer network to perform their jobs, and those employees were able to remotely access that network through a

---

[1]    Doc. 9.
[2]    *Id.*
[3]    Doc. 124-4 at 11. The facts contained in this Memorandum Opinion are derived from the affidavit of probable cause provided for the underlying search warrants. They are not intended to be viewed as definitive statements of facts.
[4]    *Id.*

program called Securelink.[5] As part of its operation, Securelink records the screen of any computer that accesses Geisinger's system without authorization.[6]

Vance, previously known as Andre Burk, was employed by Nuance until November 27, 2023, when his employment was terminated.[7] While Vance's employment was terminated on November 27, his Nuance credentials remained active until November 29, 2023.[8] In the early morning hours of November 29, Vance allegedly accessed and downloaded Geisinger patient data and sent it elsewhere.[9] An examination of Vance's Nuance account and Securelink recordings revealed that Vance had "logged into the Geisinger computer system, accessed a Geisinger patient database, and performed multiple SQL database queries on the patient database table" that included patient names, dates of birth, addresses, and medical record numbers, which were then saved to multiple files.[10] Those files were saved to Microsoft cloud storage under an account linked to Vance's email address before being "downloaded to an unknown location using IP address 97.131.2.29."[11]

Moreover, Vance had been issued a company laptop to perform his work, and that laptop logged all user activity and could be monitored remotely by Nuance.[12]

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 12.
[11] *Id.*
[12] *Id.* at 13.

Vance did not return the laptop to Nuance, and that laptop was used to perform the unauthorized access of Geisinger's computer system.[13] At no point during his employment was Vance ever authorized to export patient data.[14] Once Geisinger learned of this breach, it recreated the commands and searches performed by the unauthorized individual.[15] Geisinger discovered that patient information had been stolen for approximately 1.3 million Geisinger patients.[16]

Based on this information, on January 17, 2024, law enforcement applied for, and received, warrants to search Vance, his vehicle, and his residence and to seize digital devices that may store information related to Vance's alleged crimes.[17] Those warrants were approved by a United States Magistrate Judge in the Southern District of California[18] and were executed by the Federal Bureau of Investigation on January 18, 2024.[19]

Vance has filed numerous motions before this Court. Those include a motion for a change of venue,[20] a motion to suppress,[21] and several miscellaneous motions.[22]

---

[13] *Id.*
[14] *Id.* at 13-14.
[15] *Id.* at 12.
[16] *Id.*
[17] Docs. 124-1, 124-2, 124-3, 124-4.
[18] Docs. 124-1, 124-2, 124-3.
[19] Doc. 122 at 1.
[20] Doc. 105.
[21] Doc. 99.
[22] *See* Doc. 96 (motion for an extension of time); Doc. 101 (motion to have items returned); Doc. 112 (motion to unseal documents); Doc. 117 (motion to allow internet access); Doc. 127 (motion to update the docket); Doc. 150 (motion to file supplemental brief). Vance has also filed a motion to continue jury selection and trial (Doc. 145) which will be addressed by separate Order after briefing for that motion is complete.

The motions have been fully briefed and are ripe for disposition. For the following reasons, the motions will be denied.

## II. DISCUSSION

### A. Motion to Transfer Trial

The Court first addresses Vance's motion to transfer his trial to the United States District Court for the Southern District of California.[23] He argues that transfer is appropriate for purposes of convenience, primarily because of his conditions of confinement and the purported difficulty in selecting an impartial jury within the Middle District of Pennsylvania.[24]

The Government responds that there is no prejudice sufficient to transfer the case, as an impartial jury may easily be found within this District.[25] Nor, the Government contends, is transfer necessary for grounds of convenience or the interests of justice, since the relevant factors weigh in favor of maintaining the case before this Court.[26]

Federal Rule of Criminal Procedure 21 provides that, upon motion from the defendant, a district court may transfer the proceeding against the defendant to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial

---

[23] Doc. 105.
[24] Doc. 106.
[25] Doc. 116 at 3-8.
[26] *Id.* at 9-10.

4

trial there" or "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."[27] "Whether to transfer a case is generally committed to the discretion of the district courts" and the United States Court of Appeals for the Third Circuit has "been reluctant to put specific requirements on the process by which the district courts decide motions to transfer" so as to not unduly interfere in the exercise of that discretion.[28]

In considering a motion to transfer based on convenience, the Supreme Court of the United States has set forth ten factors that should be weighed:

> (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket condition of each district involved; and (10) any other special elements which might affect the transfer.[29]

In considering these factors, "[a] balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate."[30] The burden of proof to transfer a case is on the defendant, but "the defendant is not required to show truly compelling circumstances for change of

---

[27] Fed. R. Crim. P. 21(a), (b).
[28] *In re United States of America*, 273 F.3d 380, 387 (3d Cir. 2001).
[29] *Id.* at 387-88 (quoting *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964) (brackets and ellipses omitted).
[30] *Id.* at 388.

5

venue, but rather that all relevant things considered, the case would be better off transferred to another district."[31]

The Court first finds that Vance has failed to demonstrate that "so great a prejudice against [him] exists" within the Middle District of Pennsylvania that he "cannot obtain a fair and impartial trial" here.[32] While numerous individuals within the District have been impacted by the Geisinger data breach, as the Government points out,[33] during the last census the thirteen counties that form the venire of this Court had a total population approaching 700,000 individuals.[34] The Supreme Court has held that there is a "reduced likelihood of prejudice where [the] venire [is] drawn from a pool of over 600,000 individuals."[35]

Moreover, press coverage of this event has been fairly subdued, has not provided "blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight," and has not included "evidence of the smoking-gun variety [that] invite[s] prejudgment of [Vance's] culpability."[36]

---

[31] *Id.* (brackets, ellipses, and internal quotation marks omitted).
[32] Fed. R. Crim. P. 21(a).
[33] Doc. 116 at 5-6.
[34] *See* United States Census Bureau, *County Population Totals and Components of Change: 2020-2024*, https://www.census.gov/data/tables/time-series/demo/popest/2020s-counties-total.html (last accessed February 13, 2026).
[35] *Skilling v. United States*, 561 U.S. 358, 382 (2010) (citing *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1044 (1991)).
[36] *Id.* at 383.

Additionally, more than two years have elapsed since the underlying crime occurred and, therefore, trial will not "swiftly follow[] a widely reported crime."[37]

The Court is confident that a detailed juror questionnaire—which was discussed and agreed upon during a hearing conducted on February 5, 2026—along with a comprehensive *voir dire* process, is sufficient to select a fair and impartial jury. Accordingly, the Court discerns no great prejudice that would prevent trial from proceeding within this District.

Turning to the factors relevant for transfer based on convenience, the Court finds that these factors do not support a transfer. First, Vance is located within this District, and transferring him to California would be both costly and time-consuming at a time when trial is approximately two months away.[38] This factor weighs strongly against transferring this matter.

Second, the Government represents that only one witness that it intends to call resides on the west coast, while an expert witness is located in Colorado, and the remaining witnesses are located within this District.[39] Although Vance asserts that he may call four witnesses, none of whom are located in Pennsylvania, only one witness is located in California.[40] This factor weighs slightly against transferring the trial.

---

[37] *Id.*
[38] Doc. 110.
[39] Doc. 116 at 9.
[40] Doc. 141 at 2.

As to the third factor, Vance allegedly used his computer in California to unlawfully access and obtain the protected information. However, the information that was accessed from Geisinger was stored within this District, and the access itself occurred here. This consideration is therefore neutral.

Fourth, although the documents were electronic, they are stored within this District. Given the ease of transfer, however, this factor weighs only slightly in favor of denying transfer. The fifth factor—disruption of defendant's business unless the case is transferred—has no bearing here.

With respect to the sixth factor, expenses to the parties weighs against transferring the case. Transferring the case to California would create significant expenses for the Government—it would need to not only transfer Vance to California, but would need to fly counsel and witnesses across the country and house them in a hotel for the duration of the trial. There would also be significant expenses associated with transporting and housing standby counsel in California during the trial. Conversely, no resources would be saved by a transfer. Seventh and relatedly, counsel and Vance are all located within this District, weighing against transfer.

Eighth, both this Court and the court in the Southern District of California are easily accessible, and this factor is therefore neutral. Ninth, although this Court is unaware of the docket condition for the Southern District of California, presumably that court is able to conduct a trial in this matter, although any trial may well be

delayed by any transfer. This Court, although busy, has set aside time for a trial and is fully prepared and capable of seeing this matter to a speedy resolution. This factor is therefore neutral.

Finally, there do not appear to be any special elements that would weigh in favor of transfer. Vance provides a laundry list of issues associated with his confinement that he argues support transfer: prison officials allegedly open and inspect his mail; he has limited access to legal books; there is an inadequate law library; photocopy rules are harmful and waive attorney-client privilege; legal calls are expensive; he receives inadequate medical treatment; he is subject to more restrictions than are convicted individuals; he has no access to a notary; he has to inhale toxins from others who smoke; and his bedding is changed only once per month.[41] None of these issues justify a transfer.

As an initial matter, to the extent that he believes his constitutional rights are being violated, Vance should properly challenge these conditions through a 42 U.S.C. § 1983 civil rights complaint and seek the imposition of a temporary restraining order. Further, many of the issues to which he cites are common issues experienced by prisoners throughout the country, and *pro se* litigants often overcome them to pursue their legal cases. Third, many of these hardships may be remedied by better and more effective coordination with Vance's standby counsel, who is able

---

[41] Doc. 106 at 4-16. *See* Doc. 141 at 5-7.

to assist in any chosen defense. Finally, while Vance asserts that conditions are better in different facilities, he provides no evidence to support that notion.

In the end, the relevant considerations regarding whether to transfer a case based on convenience weigh decisively against transferring this matter to another district court. Consequently, Vance's motion will be denied.

### B. Motion to Suppress

The Court next assesses Vance's motion to suppress evidence.[42] Vance does not assert, but rather questions, whether the search warrant was unconstitutionally vague and he avers in general fashion that some of the items seized[43] were outside the scope of the search warrant.[44] He also alleges in conclusory fashion that an unnamed San Diego County deputy was permitted to conduct a warrantless search of Vance's property.[45]

The Government responds that, although Vance's arguments are difficult to discern, the searches were conducted pursuant to search warrants, and those search warrants were supported by probable cause and were sufficiently particularized.[46] For that reason, it argues that suppression is unwarranted.[47]

---

[42] Doc. 99.
[43] In his reply brief, Vance clarifies that he challenges the Government's seizure of his bank cards and passport. Doc. 156 at 1-2.
[44] Doc. 100 at 1-2.
[45] *Id.* at 2.
[46] Doc. 122.
[47] *Id.*

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence . . . [and] only once the defendant has established a basis for his motion does the burden shift to the government to show the search was reasonable."[48] Pursuant to the Fourth Amendment's prohibition on "unreasonable searches and seizures,"[49] police must generally obtain a warrant—supported by probable cause—before conducting a search.[50]

When determining whether a warrant is supported by probable cause, "[a] reviewing court may not conduct a *de novo* review of a probable cause determination."[51] Rather, "[t]he duty of a reviewing court is 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'"[52] "[I]f a substantial basis exists to support the magistrate's probable cause finding, [this Court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant."[53] Although this Court must "not merely rubber stamp a magistrate's conclusions, [it] must heed the Supreme

---

[48] *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013) (internal citation and quotation marks omitted).
[49] U.S. CONST. AMEND. IV.
[50] *See, e.g.*, *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).
[51] *United States v. Golson*, 743 F.3d 44, 53 (3d Cir. 2014) (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983)).
[52] *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Gates,* 462 U.S. at 238 (ellipsis omitted)).
[53] *Id.* (internal quotation marks omitted).

Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"[54]

"A magistrate may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[55] The United States Court of Appeals for the Third Circuit has "held that probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules."[56] "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner."[57]

Although Vance does not raise the issue of probable cause, there was clearly probably cause to conduct searches of his property. The affidavit of probable cause in support of the search warrants detailed the Geisinger security breach and stated that the information was accessed remotely through an account linked to Vance shortly after his termination from a company that provided data services for Geisinger.[58] The stolen files were then uploaded to an account linked to Vance's email account.[59] Given the specificity with which law enforcement developed that information, a reasonable magistrate judge could easily conclude that there was a

---

[54] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates,* 462 U.S. at 237 n.10 (internal citation omitted)).
[55] *Miknevich*, 638 F.3d at 182 (quoting *Gates,* 462 U.S. at 238).
[56] *Id.* (internal quotation marks omitted).
[57] *Id.*
[58] Doc. 124-4 at 11.
[59] *Id.* at 11-13.

fair probability that contraband or evidence of a crime would be found in Vance's possession—either on his person or in his residence or vehicle.

Vance argues that an unidentified "San Diego County Deputy was allowed to conduct a warrantless search,"[60] but he provides absolutely no evidence to support that assertion, as is his burden.[61] Nor does Vance point to what evidence was purportedly seized by that deputy or how that evidence is relevant to Vance's prosecution. With nothing to support Vance's bald assertion, the Court cannot find that suppression is warranted based upon the unidentified deputy.

Vance further asserts that the search conducted exceeded that authorized by the search warrants, as law enforcement seized his bank cards and passport even though the warrant authorized a search only for electronic devices.[62] Assuming, arguendo, that law enforcement improperly seized Vance's bank cards and passport, Vance fails to argue, let along demonstrate, that any of the evidence used by the Government in this case is fruit of the poisonous tree obtained from the improper search and seizure of the bank cards and passport.[63] That is to say, Vance makes no

---

[60] Doc. 100 at 2.
[61] *Benoit*, 730 F.3d at 288.
[62] Doc. 156 at 1-2. *See* Doc. 100 at 1-2. While not relevant to the Court's inquiry, Vance's statement that law enforcement could only seize "electronic devices capable of storing information and similar items" (Doc. 100 at 2) is not strictly accurate. The search warrant applied primarily to electronic devices, but also permitted seizure of information related to "who used, owned, or controlled the Device(s)" as well as information that, among other things, could identify other places where such devices may be stored and identify any potential coconspirators. *See, e.g.*, Doc. 124-1 at 5-6.
[63] *See Nix v. Williams*, 467 U.S. 431, 441-42 (1984) (explaining that, where evidence is obtained unlawfully, exclusion of "other incriminating evidence derived from the primary evidence"

assertion that the electronic evidence seized by the Government was taken as a result of allegedly improperly seized items. The Court therefore sees no basis for exclusion of any evidence based on the alleged seizure of those items.

The searches of Vance and his property were conducted based upon search warrants that were supported by probable cause. Vance points to nothing that would undermine the searches, nor any reason to suppress any evidence seized. Accordingly, his motion to suppress will be denied.

### C. Miscellaneous Motions

Finally, the Court considers Vance's miscellaneous motions. His motion for an extension of time to file a motion for reconsideration is withdrawn based upon Vance's request,[64] and his motion for leave to file a supplemental brief in support of his motion to continue jury trial will be granted and the brief deemed filed.[65]

With respect to Vance's motion to have items returned, the law is clear that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return," but such a "motion must be filed in the district where the property was seized."[66] Because the items were seized in the Southern District of California, the motion has been improperly filed

---

    may be appropriate if "the evidence to which instant objection is made has been come at by exploitation of" the illegal search).
[64] *See* Docs. 96, 144.
[65] Doc. 150.
[66] Fed. R. Crim. P. 41(g).

here, and will be denied. However, the Government stated during the conference conducted on February 5, 2026, that it would return all items within its possession in this District that are not required for trial or subject to forfeiture, and it is encouraged to so do.

As to Vance's motion to unseal documents,[67] those documents contain information subject to the protective order implemented by this Court on April 22, 2025.[68] As such, they are properly sealed, and the motion to unseal them will be denied.

With regard to Vance's motion to require internet access,[69] the Court sees no issue with providing Vance access to the internet, as long as the staff and management at his place of confinement is able to provide such access consistent with the security of the facility. Vance's motion is therefore granted in part, but only to the extent that the facility, in its judgment, may do so consistent with the security needs of the facility. Finally, Vance has filed a motion to update the docket.[70] The Court has addressed the errors noted by Vance, and his motion will be denied as moot.

---

[67] Doc. 112.
[68] Doc. 56, 105, 106.
[69] Doc. 117.
[70] Doc. 127.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Vance's motion to transfer trial, suppress evidence, return items, unseal documents, and update the docket. His motion for an extension of time is deemed withdrawn, his motion to file a supplemental brief is granted, and his motion to require internet access is granted in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge